J. E. Young v. The State.

No. 14293.   Delivered May 18, 1932.
Reported in 50 S. W. (2d) 296.

The opinion states the case.

*Collins & Martin,* of Hillsboro, and *Charles L. Black* and *J. W. Wheeler,* both of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for embezzlement; punishment, three years in the penitentiary.

On April 10, 1928, appellant was cashier of the First State Bank at Abbott, Texas. V. H. Sims had $3,217.21 in said bank in a checking account. On said date an account was opened on the books of the bank with "V. H. Sims Special," by a deposit therein of $3,000, and a charge for the same amount was then entered against the checking account of Mr. Sims. Who made the entries, is a matter not shown, but left to deduction and conjecture. The testimony fails to show who worked in the bank further than to show that its president was a Mr. Beavers, and that appellant was cashier, and is referred to as the active man in the bank. On July 30, 1928, there was a charge entry of $900, and another on August 2, 1928, of $785, against the account of V. H. Sims, Special. On November 8, 1928, said account was credited with $1,685, which was the aggregate amount of the two charge entries above mentioned. The books of the bank showed also a charge against said special account on November 8th of $3,000, thus closing the account. There is no showing as to who made any of these entries.

The records of the bank failed to reveal any check, draft or other instrument executed by Mr. Sims affecting the transfer of the $3,000 from the Sims checking account to the Sims special account, or the closing of said account, or any of the charges against, or credits to, same. Mr. Sims testified that he never knew of any such account as "V. H. Sims Special." He further testified that in the spring of 1928 appellant came to him to borrow $900 to cover, as appellant stated to him, moneys advanced to farmers whose checks appellant had and was carrying as cash, the occasion of the need for borrowing being that the bank examiner was there and was not satisfied with the appearance of the farmers' checks in the bank. Mr. Sims said appellant gave him his note for said amount and received in exchange Mr. Sims' check on the First State Bank for said sum. Sims further testified that two or three months later appellant called him in the bank to pay the note referred to, and as appellant was figuring the interest that he, Sims, said to appellant that he had had $3,000 in the bank for some time, and if it suited appellant, he would leave it there until October 18, 1928, provided he would pay him six per cent interest on same, to which appellant agreed. Mr. Sims testified that appellant then paid him the $900 on his note, and also that on October 18th a time certificate for $3,000 was issued to him by appellant, which certificate, according to Mr. Curran, an accountant and witness for the state, bore date October 18, 1928, and was due in twelve months with interest, but of which there was no mention on the books of the bank. Mr. Curran also testified that a deposit of $900 on July 30, 1928, was credited to the Sims Special account, but we fail to find it on the account as itself is in

the record, and suppose the witness meant that he found a check for that amount and date was charged against said account, which latter appears true from the account itself as it is in the record here.

Mr. Curran's audit of the bank books was in May, 1929. He seems to have identified the ledger sheets of the bank, though there is some confusion as to whether the sheets appearing in the statement of facts are the statement sheets or ledger sheets. These sheets cover appellant's account with the bank from December, 1925, to February, 1929. The state also introduced checks drawn by appellant upon his account in said bank from August 1, 1927, to April 23, 1929. Mr. Curran further testified that he had totaled checks drawn by appellant, both those shown on the ledger sheet and those not so shown; both those marked paid and those not so marked,—covering from August, 1927, to April, 1929, with the exception of the months of May and June, 1928, November and December, 1928, January and February, 1929,—which totals he gave. We have no means of knowing how many checks entering into these totals were unpaid or otherwise.

The court declined to submit the case to the jury upon the theory of circumstantial evidence, which failure was made the subject of an exception on the part of appellant. Mr. Curran testified to a conversation had by him with appellant after he had audited these books, a part of which conversation is quoted in the state's brief and relied on as taking this case out of the rule of circumstantial evidence. We reproduce same: "After tracing this matter in the same manner I have described I then took the matter up with Mr. Young (appellant) and called his attention to it in the manner substantially as I have testified here. Mr. Young said it was correct." The contention of the state in this regard is that a correct interpretation of said quotation would be that thereby appellant admitted to Curran that the withdrawal of the $3,000 from Sims' account, the closing of that account, and the issuance of the time certificate of deposit, together with withdrawals in the Crocker account, shows a $3,000 shortage, and is tantamount to a direct admission of the truth of the criminating facts relied on by the state. We are not able to agree with the state's contention in this regard. The matters relating to the Crocker account mentioned occurred in 1926, and January, 1927, and had been closed up and settled long before there arose any question relating to the transfer of money from the Sims account. The only statement in the quotation above which is attributed to appellant, is as follows: "Mr. Young said it was correct." We infer from the record, connected with and preceding said quoted statement, that it might as easily be understood that appellant was contending that what the books showed was in fact correct, as to say that he thereby intended to admit the correctness of all the various things covering a couple of years which seem to have been referred to in the testimony of Mr. Curran. Appellant's account with said bank during

1928 was introduced and showed no large deposits at any time, and none which are traced to any transfer of any part of the $3,000 item in the Sims account. In fact, if the $900 loan by Sims to appellant on July 30th, and another item of a $1,000 deposit resulting from a sale of some stock which appellant apparently thought he had made when he deposited the draft for $1,000 with the stock attached drawn on a Mr. Hammon of Kosse, who testified in the case that he had agreed with appellant to purchase that amount of stock, be omitted from our consideration, appellant's deposit account during 1928 rarely amounted to as much as $200, and much of the time said account was overdrawn. There is no testimony that appellant purchased any property, or any direct testimony that he appropriated any part of said $3,000. We note in the testimony of Mr. Sims in testifying that he got his money on the time deposit certificate, as follows: "When I finally got my money on it it was paid by Mr. Mateka, I think his name is, he works at the First State Bank."

It seems to be contended by the state that the aggregate amount of the checks against appellant's account exceeds the amount of his deposits. If this be admitted to be true, we would still think it but a circumstance to be considered in determining whether appellant wilfully and fraudulently embezzled money of the bank. We are not undertaking the laborious task of adding and comparing the deposits and checks during all of the months of the years covered by the testimony, but did go through the ledger sheet or statement sheet, as it appears in the record, for the purpose of comparing the deposits shown thereon during April, 1928, as compared with the checks drawn during the same time, and find that the deposits exceed the checks by the approximate sum of $50. We might observe that a considerable number of checks introduced in evidence appear to be signed by appellant's wife. We are constrained to believe that in refusing to charge the jury the law of circumstantial evidence the learned trial judge fell into error for which the case must be reversed.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*